# EXHIBIT A

STATE COURT OF MICHIGAN
LIVINGSTON COUNTY CIRCUIT COURT

MEGAN RAINER,

    Plaintiff,　　　　　　　　　　　Case No.　　　CD
　　　　　　　　　　　　　　　　　　　Hon:
v

SOUTH LYON COMMUNITY
SCHOOL DISTRICT,
a governmental entity,

    Defendants.

James K. Fett (P39461)
Fett & Fields, P.C.
407 North Main Street, 2nd Floor
Ann Arbor, MI 48104
734-954-0100
Fax: 734-954-0762
jim@fettlaw.com
Attorney for Plaintiff

# **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, now between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

                                                     */s/ James K. Fett*
                                                   James K. Fett (P39461)
                                                   Attorney for Plaintiff

Plaintiff, through counsel, Fett & Fields, P.C., states the following claims against Defendant:

## NATURE OF CLAIM

1. This is a Michigan Whistleblower Protection Act, MCL § 15.362, FMLA Retaliation, and Disability Discrimination action arising out of Defendant's retaliation against Plaintiff for reporting violations of law governing the safety of students and staff, and for exercising her right to intermittent FMLA to accommodate her disability.

## JURISDICTION, PARTIES, AND VENUE

2. Plaintiff was employed by Defendant South Lyon Community School District as a Special Education Teacher and is a resident of Livingston County, Michigan.

3. Defendant South Lyon Community School District is a public entity charged with operating the South Lyon public education system and is located in Oakland County, Michigan.

4. The events giving rise to this cause of action occurred in Oakland County, Michigan.

5. Venue is proper pursuant to MCL § 15.363 (2).

6. The amount in controversy exceeds $25,000.00, exclusive of interest, costs and attorney fees.

## FACTS

7. Plaintiff was hired by the South Lyon Community School District ("District") in or around August 2022 as a Special Education Teacher.

8. Plaintiff initially taught Cognitive Impairments/Level 3 Special Education at Centennial Middle School (Grades 6-8) during the 2022-2023 academic year.

2

9. In May 2023, Plaintiff requested an in-district transfer to an elementary school location to accommodate her own children's school schedules.

10. In the fall of 2023, Plaintiff began teaching a newly created "Transition" program for 2nd-4th grade students with cognitive impairments at Hardy Elementary, preparing students to move from certificate to diploma tracks.

11. In November 2023, at the request of Principal Emily Testani and Special Education Coordinator Amy Atwell, Plaintiff agreed to take over a failing 1st–2nd grade TEACCH classroom for students with the most severe speech, behavioral, and learning needs.

12. Plaintiff took over the program alongside a retired teacher, and together they achieved success in stabilizing the classroom.

13. At the end of January 2024, the retired teacher's temporary contract expired, leaving Plaintiff solely responsible for the high-needs classroom with only two paraprofessionals.

14. In February 2024, Plaintiff was approved for intermittent FMLA due to Type 1 Diabetes.

15. From March to April 2024, one of the two paraprofessionals resigned due to emotional and physical injury caused by student behaviors, leaving the classroom dangerously understaffed.

16. During this time, Plaintiff made repeated written and verbal requests to Principal Testani and Coordinator Atwell for additional trained support staff due to the ongoing risk of serious injury to students and staff.

17. Students in the TEACCH program exhibited severe behaviors including biting, spitting, kicking, punching, scratching, urinating on others, and eloping (running away, including into traffic).

18. Plaintiff sustained multiple physical injuries, including permanent scarring on her arms and hands, and had chunks of hair pulled out by students; she sought urgent care treatment and documented these incidents.

19. Other classrooms with similar or less intensive needs were provided with three to five trained paraprofessionals, while Plaintiff's requests for equitable staffing were denied.

20. Instead of addressing her safety concerns, District administration began retaliating against Plaintiff by closely monitoring her, enlisting colleagues and outside agencies to report on her, and issuing pretextual disciplinary write-ups.

21. Plaintiff was subjected to multiple formal disciplinary meetings and write-ups, including on April 2, 2024; April 5, 2024; October 30, 2024; November 8, 2024; November 14, 2024; November 19, 2024; December 18, 2024; and January 24, 2025.

22. In May 2024, despite the disciplinary write-ups, Plaintiff received a "Highly Effective" rating on her annual teaching evaluation.

23. In June 2024, meetings were held to restructure programs for the 2024–2025 school year due to widespread safety concerns in Plaintiff's classroom; all participants agreed on the need for program restructuring and better support.

24. Plaintiff returned in August 2024 under a renewed teaching contract and found that class lists had been altered again, concentrating high-needs students in her classroom.

25. She was assigned three new paraprofessionals, of which only one was trained.

26. One of the paraprofessionals was immediately removed and reassigned to another teacher who had previously refused a high-behavior student.

27. That same student was then reassigned to Plaintiff's class, increasing the behavioral load.

28. On or around October 2024, Plaintiff again emailed administrators, including Testani and Atwell, requesting additional support due to classroom safety concerns.

29. From October through December 2024, Plaintiff received a barrage of disciplinary meetings and write-ups in close temporal proximity to her complaints.

30. In one instance, on November 14, 2024, Plaintiff was disciplined for taking FMLA leave.

31. Defendant commented that Plaintiff was "missing a lot of days" and instructed her to obtain another doctor's note supporting her already approved intermittent FMLA.

32. Also in November 2024, one of Plaintiff's remaining paraprofessionals was terminated, leaving the class severely understaffed.

33. Meanwhile, other similar programs continued to have multiple trained support staff.

34. The District introduced a third-party contractor, Total Education Solutions (TES), to observe classroom behavior from November 2024 through January 2025, but no meaningful staffing changes were made to support Plaintiff.

35. On January 24, 2025, Plaintiff attended a virtual meeting with TES representatives, Testani and Atwell at which TES recommended scheduling adjustments to reduce aggressive behaviors.

5

36. Rather than facilitating the reduction of aggressive behaviors, Testani and Atwell increased the danger to Plaintiff's personal safety as well as the safety of staff and students by removing Plaintiff's last trained paraprofessional and replacing them with an untrained individual.

37. The new staffing in Plaintiff's classroom was in marked contrast to other classrooms; for example, one classroom had a teacher and five trained staff for 15 lesser needs students, while Plaintiff had one teacher, two untrained staff, one 1:1 aide, and nine high-needs students.

38. Plaintiff's classroom was now more dangerous than ever before.

39. Fearing for her own personal safety, as well as the safety of staff and students, Plaintiff consulted her union.

40. The union acknowledged that the situation resembled whistleblower retaliation.

41. On January 26, 2025, Plaintiff resigned due to unsafe working conditions, Defendant's refusal to adequately address student and staff safety concerns, and the retaliation she experienced for reporting the safety concerns and exercising her rights under the FMLA to accommodate her disability.

42. Any reasonable person in Plaintiff's position would have felt compelled to resign and therefore her resignation constitutes a constructive discharge.

43. Defendant's recalcitrance in the face of the above horrific conditions forced Plaintiff to resign for her own personal safety.

## COUNT I
## WHISTLEBLOWER RETALIATION
## (MCL § 15.362)

44. Plaintiff incorporates by reference the preceding paragraphs.

6

45. Plaintiff engaged in protected activity under the Michigan Whistleblower Protection Act, MCL § 15.362, when she reported violations of numerous laws governing student and staff safety, including, but not limited to, the Michigan Special Education Code, MCL § 380.1701, *et seq.*, the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 as well as violations of worker safety laws, including the state and federal OSHA laws.

46. Defendants were aware of Plaintiff's protected activity.

47. Plaintiff was disciplined, otherwise retaliated against, and constructively discharged due to her protected activity.

48. Plaintiff's discharge on this basis violates MCL § 15.362 of the Whistleblowers' Protection Act.

49. As a proximate result of Defendants' unlawful conduct Plaintiff suffered physical injuries and continues to suffer injuries, and damages, including but not limited to, loss of earnings and earning capacity; loss of career opportunity; humiliation, outrage, embarrassment, mental and emotional distress and the physical manifestations of those injuries.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants for:

    a. Economic damages;

    b. Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

    c. Costs, interest and reasonable attorney fees;

    d. Exemplary damages against Defendants; and

    e. Such other equitable relief as the Court deems just.

## COUNT II
## FMLA RETALIATION

50. Plaintiff incorporates by reference the preceding paragraphs.

51. Plaintiff engaged in protected activity under the FMLA when she exercised her right to intermittent FMLA.

52. Defendant disciplined, otherwise retaliated against, and constructively discharged Plaintiff because she exercised her rights under the FMLA.

53. Defendant's conduct on this basis violates the Family Medical Leave Act, 29 U.S.C. § 2601, et seq.

54. As a proximate result of Defendant's illegal conduct, Plaintiff has suffered, and will continue to suffer, emotional distress, especially outrage, lost opportunities, embarrassment and the physical manifestations of these injuries, as well as economic damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants for:

a. Economic damages;

b. Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c. Costs, interest and reasonable attorney fees;

d. Liquidated damages; and

e. Such other equitable relief as the Court deems just.

## COUNT III
## DISABILITY DISCRIMINATION

55. Plaintiff incorporates by reference the preceding paragraphs.

56. Plaintiff is a disabled person as defined in the Michigan Persons with Disabilities Civil Rights Acts, MCLA 37.1101, et seq., because (1) she has a determinable physical

characteristic (Type 1 Diabetes) which substantially limits one or more major life activities and is unrelated to her ability to perform her job, and (2) Defendant regarded her as a person with a determinable physical characteristic which substantially limits one or more major life activities which is unrelated to her ability to perform her job.

57. Defendant disciplined, otherwise discriminated against, and constructively discharged Plaintiff.

58. Plaintiff's disability is the reason for Defendant's adverse actions against Plaintiff.

59. Defendant's conduct on this basis violates the Michigan Persons with Disabilities Civil Rights Act, MCLA 37.1101, *et seq*.

60. As a direct and proximate result of Defendant's illegal discrimination, Plaintiff has suffered bodily injury, depression, emotional and physical distress, mental and physical anguish, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants for:

    a. Economic damages;

    b. Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

    c. Costs, interest and reasonable attorney fees;

    d. Exemplary damages against Defendants; and

    e. Such other equitable relief as the Court deems just.

Respectfully submitted,

*/s/ James K. Fett*
By: James K. Fett (P39461)
Fett & Fields, P.C.

|  |  |
|---|---|
|  | 407 North Main Street, 2nd Floor |
|  | Ann Arbor, MI 48104 |
|  | 734-954-0100 |
|  | jim@fettlaw.com |
| Dated: April 18, 2025 | Attorney for Plaintiff |

## JURY DEMAND

Plaintiff, through his counsel, demands trial by jury in the above-captioned matter.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ James K. Fett* |
|  | By:  James K. Fett (P39461) |
|  | Fett & Fields, P.C. |
|  | 407 North Main Street, 2nd Floor |
|  | Ann Arbor, MI 48104 |
|  | 734-954-0100 |
|  | jim@fettlaw.com |
| Dated: April 18, 2025 | Attorney for Plaintiff |

10